UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Bluefire Wireless, Inc.,

                            Plaintiff,

-against-

Cloud9 Mobile Communications, Ltd., Cloud9 Mobile
Communications (Wholesale Services), Ltd., Cloud9
Mobile International, Ltd., Wire9 Telecom, Ltd.,
Cloud9 Mobile Communications PLC, David Sutton,
Lee Jones, Jean Christophe Viguier, and Martin
Holloway,

                            Defendants.

Case No. 09 CV 7268 (HB)(FM)

ECF CASE

## MEMORANDUM OF LAW
### IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

Page

**TABLE OF AUTHORITIES** ……………………………………………………………..iii

**PRELIMINARY STATEMENT** ……………………………………………………… 1

**ARGUMENT** ……………………………………………………………………………… 2

I.    PLAINTIFF'S COMPLAINT SHOULD BE
      DISMISSED BECAUSE THIS COURT DOES NOT
      HAVE PERSONAL JURISDICTION OVER THE DEFENDANTS ……………………2

      A. This Court Does Not Have General Jurisdiction
         Over Any Of The Defendants Pursuant To CPLR § 301 …………...……………………2

      B. This Court Does Not Have Personal
         Jurisdiction Pursuant To CPLR § 302(a)(1)
         Because None Of The Defendants Transacted Business In New York …………………6

      C. This Court Does Not Have Personal Jurisdiction
         Pursuant To CPLR § 302(a)(1) Because None Of
         The Defendants Contracted To Supply Goods Or Services In New York ……………...10

      D. This Court Does Not Have Personal Jurisdiction
         Over Any Of The Defendants Pursuant To CPLR § 302(a)(2) …………………………11

      E. This Court Does Not Have Personal Jurisdiction
         Over Any Of The Defendants Pursuant To CPLR § 302(a)(3)(i)
         Because The Situs Of Plaintiff's Alleged Injury Was Not In New York ………………12

      F. This Court Does Not Have Personal Jurisdiction
         Over Any Of The Defendants Pursuant To CPLR § 302(a)(3)(ii)
         Because New York Consequences Were Not Reasonably Foreseeable ………………14

      G. This Court Does Not Have Personal Jurisdiction
         Over Any Of The Individual Defendants Because
         The Corporate Defendants Did Not Act As Their Agents ……………………………...15

II.   IN THE ALTERNATIVE, PLAINTIFF'S
      COMPLAINT SHOULD BE DISMISSED FOR
      IMPROPER VENUE AND *FORUM NON CONVENIENS* ……………………………16

      A. The Forum Selection Clause In The Parties'
         Contract Bars Maintenance Of This Action In New York ………………………………...16

B. This Action Ought To Be Dismissed
Pursuant To The *Forum Non Conveniens* Doctrine ...........................................19

III. IN THE ALTERNATIVE, PLAINTIFFS'
COMPLAINT SHOULD BE DISMISSED FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ...................21

A. Plaintiff's Fraud Claim Should Be Dismissed Because It Is Not Pleaded With
Particularity And It Is Duplicative Of The Breach Of Contract Claim .....................21

B. Plaintiff's New York Deceptive Practices Law Claim
Should Be Dismissed Because The Defendants' Alleged
Acts Are Not Consumer-Oriented And Relate To A Private Contract Dispute ...........24

C. Plaintiff's RICO Claim Should Be Dismissed Because
The Required Elements For Liability Have Not Been Pled ..............................25

D. Plaintiff's Negligent Misrepresentation Claim
Should Be Dismissed Because The Plaintiff Does
Not Identify Any Specific Statements And There Is
No Special Relationship Between Any Of The Parties.......................................25

E. Plaintiff's Punitive Damages Claim
Should Be Dismissed Because The Defendants' Alleged
Acts Are Not Morally Reprehensible Or Aimed At The Public-At-Large ..................26

F. Plaintiff's Claims Against The Individual Defendants
Should Be Dismissed Because The Complaint Does Not
Identify Any Independent Tortious Acts By The Individual
Defendants And The Corporate Defendants Are Not Mere Shells ..........................27

**CONCLUSION** ...............................................................................29

TABLE OF AUTHORITIES

STATUTES                                                                                      Page

Fed. R. Civ. P. 9(b) ………………………………………………………21, 25-26

Fed. R. Civ. P. 12(b)(2) …………………………………………………………………2

Fed. R. Civ. P. 12(b)(3) ………………………………………………………...16

Fed. R. Civ. P. 12(b)(6) …………………………………………………………..21

New York CPLR § 301 ………………………………………………………...2, 3

New York CPLR § 302 …………………………………………….……6-7, 10-15

New York GBL § 349 ………………………………………………………...24-25

CASES

Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.
98 F.3d 25 (2d Cir. 1996). …………………………………………………………6

Atalanta Corp. v. Polskie Linie Oceaniczne
683 F. Supp. 347 (S.D.N.Y. 1988) ……………………………………………...13, 14

Ball v. Metallurgie Hoboken-Overpelt, S.A.
902 F.2d 194 (2d Cir. 1990) ………………………………………….....................14

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez
171 F.3d 779 (2d Cir. 1999) ……………………...……………………………2, 12

Bell Atlantic Corp. v. Twombly
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) …………………………………21

Bensusan Restaurant Corp. v. King
126 F.3d 25 (2d Cir. 1997) ………………………………………………………11

Bridgestone/Firestone, Inc., v. Recovery Credit Servs., Inc.
98 F.3d 13 (2d Cir. 1996) ………………………………………………………...23

Bulk Oil (USA) Inc. v. Sun Oil Trading Co.
584 F. Supp. 36 (S.D.N.Y. 1983) ……………………………....................................15

Carematrix of Massachusetts, Inc. v. Kaplan
385 F. Supp. 2d 195 (S.D.N.Y. 2005) (Baer, J.) ………………………………………16, 17, 19

Carlson v. Cuevas
932 F. Supp. 76 (S.D.N.Y. 1996) (Baer, J.) …………………………………………….........11

Cerveceria Modela, S.A. De C.V. v. USPA Accessories LLC
No. 07 Civ. 7998, 2008 U.S. Dist. LEXIS 28999 (S.D.N.Y. April 10, 2008) (Baer, J.) ……...27

Cooperstein v. Pan-Oceanic Marine, Inc.
124 AD2d 632, 507 NYS2d 893 (2d Dep't 1986) …………………………………………….......15

Cosmas v. Hassett
886 F.2d 8 (2d Cir. 1989) ………………………………………………………………………...21

Cruz v. NYNEX Info. Res.
263 A.D.2d 285, 703 N.Y.S.2d 103 (1st Dep't 2000) …………………………………………...25

Cutco Industries v. Naughton
806 F.2d 361 (2d Cir. 1986) ……………………………………………………………………….6

Diario El Pais, S.L. v. The Nielsen Co., (US), Inc.
No. 07 Civ. 11295, 2008 U.S. Dist. LEXIS 92987 (S.D.N.Y. November 6, 2008) (Baer, J.) ...26

Direct Mail Prod. Servs. Ltd. v. MBNA Corp.
No. 99 Civ. 10550, 2000 U.S. Dist. LEXIS 12945 (S.D.N.Y. September 7, 2000) …………..18

DiVittorio v. Equidyne Extractive Indus., Inc.
822 F.2d 1242 (2d Cir. 1987) …………………………………………………………………….22

ExxonMobil Inter-America, Inc. v. Advanced Information Engineering Servs., Inc.
328 F. Supp. 2d 443 (S.D.N.Y. 2004) …………………………………………………………24, 25

Fantis Foods, Inc. v. Standard Importing Co., Inc.
49 N.Y.2d 317, 402 N.E.2d 122, 425 N.Y.S.2d 783 (1980) ………………………………12, 14

GICC Capital Corp.
67 F.3d 463 (2d Cir. 1995) …………………………………………………………………...25, n.5

Greenlight Capital, Inc. v. Greenlight (Switzerland) S.A.
No. 04 Civ. 3136, 2005 U.S. Dist. LEXIS 2 (S.D.N.Y. January 4, 2005) (Baer, J.) ………......2

HNY Assocs., LLC v. Summit Resort Props.
No. 01 Civ. 0428, 2001 U.S. Dist. LEXIS 5310 (S.D.N.Y. April 30, 2001) (Baer, J.) ……….17

Hughes v. BCI International Holdings, Inc.
452 F. Supp. 290 (S.D.N.Y. 2006) (Baer, J.) …………………………………………………….10

Hydro Investors, Inc. v. Trafalgar Power, Inc.
227 F.3d 8 (2d Cir. 2000) ……………………………………………………………..26

International Telecom, Inc. v. Generadora Electrica Del Oriente, S.A.
No. 00 Civ. 8695, 2002 U.S. Dist. LEXIS 5023 (S.D.N.Y. March 27, 2002) ……...6, 13, 22, 25

In re Gildan Activewear, Inc.
No. 08 Civ. 5048, 2009 U.S. Dist. LEXIS 55984 (S.D.N.Y. July 1, 2009) (Baer, J.) ……21, n.3

Iragorri v. United Technologies Corp.
274 F.3d 65 (2d Cir. 2001) (en banc) …………………………………………………19

IXE Banco, S.A. v. MBNA America Bank, N.A.
No. 07 Civ. 0432, 2008 U.S. Dist. LEXIS 19806 (S.D.N.Y. March 7, 2008) ……………..26

Karabu Corp. v. Gitner
16 F. Supp. 2d 319 (S.D.N.Y 1998) ………………………………………….....................16

Landoil Resources Corp. v. Alexander & Alexander Servs.
918 F.2d 1039, 1043 (2d Cir. 1990) …………………………………………………2, 5

Le Paw v. BAT Industries P.L.C.
No. 96 Civ. 4373, 1997 U.S. Dist. LEXIS 5328 (E.D.N.Y March 11, 1997) ……………25, n.4

Mareno v. Rowe
910 F.2d 1043 (2d Cir. 1990) …………………………………………..…………..12

Mills v. Polar Molecular Corp.
12 F. 3d 1170 (2d Cir. 1993) ………………………………………………………22, 28

Mobile Data Shred, Inc. v. United Bank of Switzerland
No. 99 Civ. 10315, 2000 U.S. Dist. LEXIS 4252 (S.D.N.Y. April 5, 2000) …………………27

Morris v. N.Y. State Dep't of Taxation & Fin.
82 N.Y.2d 135, 623 N.E.2d 1157, 603 N.Y.S.2d 807 (1993) …………………………….28

Murtha v. Yonkers Child Care Ass'n, Inc.
45 N.Y.2d 913, 383 N.E.2d 865, 411 N.Y.S.2d 219 (1978) …………………………27, 28

New Moon Shipping Co., Ltd. v. Man B & W Diesel AG
121 F.3d 24 (2d Cir. 1997) ………………………………………………………18

Novak v. Scarborough Alliance Corp.
481 F. Supp. 2d 289 (S.D.N.Y.2007) …………………………………………………...29

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.
85 N.Y.2d 20, 647 N.E.2d 741, 623 N.Y.S. 2d 529 (1995) …………………………………...24

Page v. Muze, Inc.
270 A.D.2d 401, 705 N.Y.S.2d 383 (2d Dep't 2000) …………………………………………23

Phillips v. Audio Active Ltd.
494 F.3d 378 (2d Cir. 2007) ……………………………………………………16, 17, 18, 19

Pieczenik v. Dyax Corporation
No. 00 Civ. 243, 2000 U.S. Dist. LEXIS 9533 (S.D.N.Y. July 11, 2000) (Baer, J.) ………....12

Rivas v. Amerimed USA, Inc.
24 A.D.3d 250, 824 N.Y.S.2d 41 (1st Dep't 2006) …………………………………………23, 27

Roby v. Corporation of Lloyd's
996 F.2d 1353 (2d Cir. 1993) ……………………………………………………………18, 19, 20

Rolls Royce Motors, Inc. v. Charles Schmitt & Co.
657 F. Supp. 1040 (S.D.N.Y. 1987) ……………………………………………….....................11

Russbeer Int'l LLC v. OAO Baltika Brewing Co.
No. 07 Civ. 1212, 2008 U.S. Dist. LEXIS 25471 (E.D.N.Y. March 31, 2008) ………………17

Securities Training Corp. v. Securities Seminar, Inc.
633 F. Supp. 938 (S.D.N.Y. 1986) ………………………………………………………...13

Sheth v. N.Y. Life Ins. Co.
273 A.D.2d 72, 709 N.Y.S.2d 74 (1st Dep't 2000) …………………………………………...24

Smith v. Morris & Manning
647 F. Supp. 101 (S.D.N.Y. 1986) ……………………………………………………13, n.2

Stamm v. Barclays Bank of New York
960 F. Supp. 724 (S.D.N.Y. 1997) ……………………………………………………………19

Sunward Electronics, Inc. v. McDonald
362 F.3d 17 (2d Cir. 2004) …………………………………………………………………...7

Universal Grading Service v. eBay, Inc.
No. 08 Civ. 3557, 2009 U.S. Dist. LEXIS 49841 (S.D.N.Y. June 10, 2009) …………………19

Valjean Manufacturing Inc. v. Michael Werdiger, Inc.
No. 03 Civ. 6185, 2004 U.S. Dist. LEXIS 17580 (S.D.N.Y. September 2, 2004) (Baer, J.) ....23

Whitaker v. Fresno Telstat, Inc.
87 F. Supp. 2d 227 (S.D.N.Y 1999) …………………………………………………………..10

William Passalacqua Builders, Inc. v. Resnick Developers S., Inc.
933 F.2d 131 (2d Cir. 1991) …………………………………………………………………...28

## PRELIMINARY STATEMENT

Defendants Cloud9 Mobile Communications, Ltd. (formerly known as Cloud9 Mobile Communications PLC), Cloud9 Mobile Communications (Wholesale Services), Ltd., Cloud9 Mobile International, Ltd., Wire9 Telecom, Ltd., David Sutton, Jean Christophe Viguier, and Martin Holloway ("Defendants") respectfully submit this memorandum of law, together with the accompanying Declaration of Jean Christophe Viguier ("Viguier Dec."), dated September 14, 2009, Declaration of David Sutton ("Sutton Dec."), dated September 14, 2009, Declaration of Martin Holloway ("Holloway Dec."), dated September 14, 2009, Declaration of Donovan Wickline  ("Wickline Dec."), dated September 14, 2009, and the exhibits annexed thereto, in support of Defendants' motion to dismiss Plaintiff's Complaint (1) pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(2) for lack of personal jurisdiction; or, alternatively, (2) pursuant to FRCP Rule 12(b)(3) for improper venue and *forum non conveniens*; or, alternatively, (3) pursuant to FRCP Rule 12(b)(6) for failure to state a claim upon which relief can be granted; and for such further relief as the Court deems just and proper.

Plaintiff filed this specious, retaliatory action after a simple contract dispute arose between the Plaintiff and one Defendant--Cloud9 Mobile Communications (Wholesale Services), Ltd. ("Cloud9 Wholesale")--that Plaintiff improperly attempts to transform into a fraud case against Cloud9 Wholesale and other corporate parties and individuals that Plaintiff did not contract with for the sole purpose of avoiding the forum selection clause in the agreement between Plaintiff and Cloud9 Wholesale, and manufacturing jurisdiction with this Court where it does not properly lie.

**ARGUMENT**

I.

PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE DEFENDANTS

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendant.  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).  It is axiomatic that personal jurisdiction in a diversity action is determined by the law of the state in which the district court sits, here, New York.  Id.  Because the question of personal jurisdiction is "inherently a matter requiring the resolution of factual issues outside of the pleadings," this Court, in deciding the motion, may consider all relevant documentation submitted by the parties. Greenlight Capital, Inc. v. Greenlight (Switzerland) S.A., No. 04 Civ. 3136, 2005 U.S. Dist. LEXIS 2, at *5 (S.D.N.Y. January 4, 2005) (Baer, J.).

A.     This Court Does Not Have General Jurisdiction
       Over Any Of The Defendants Pursuant To CPLR § 301

Foreign corporations and individuals, like the Defendants, may be subjected to personal jurisdiction in New York under CPLR § 301 if they are present or "doing business" in the state.  The Defendants' activity rises to the level of "doing business" only if they are "engaged in such a continuous or systematic course of 'doing business' here as to warrant a finding of its 'presence' in the jurisdiction."  Landoil Resources Corp. v. Alexander & Alexander Servs., 918 F.2d 1039, 1043 (2d Cir. 1990) (quoting McGowan v. Smith, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643, 645 (1981)).

In assessing jurisdiction over foreign defendants, like those here, "New York courts have generally focused on the following indicia of jurisdiction: the existence of an office

2

in New York; the solicitation of business in New York; the presence of bank accounts or other property on New York; and the presence of employees or agents in New York." Landoil, 918 F.2d at 1043.

Here, there is no personal jurisdiction under CPLR § 301 because none of the Defendants have an office in New York, solicit business in New York, have bank accounts or other property in New York, or have employees or agents in New York. See Viguier Dec. at ¶¶ 5, 16, 26, 36 and 46; Sutton Dec. at ¶ 5; and Holloway Dec. at ¶ 5.

Defendant Cloud9 Mobile Communications, Ltd., formerly known as Defendant Cloud9 Mobile Communications PLC, is an Isle of Man company with its principal place of business in the Isle of Man. See Viguier Dec. at ¶ 14. Cloud9 Mobile Communications, Ltd. provides telecommunication services in the Isle of Man. Id. at ¶ 16. Its employees all work and reside in the United Kingdom and the Isle of Man. Id. It does not maintain any offices in New York, nor any state in the United States, and is not licensed to do business in New York. Id. The company does not have a registered agent for service of process in New York; it has no New York subsidiaries, divisions or affiliates; it has no New York telephone listing or mailing address; it does not advertise or solicit business in New York; it does not have any bank accounts in New York; it does not have any agents in New York; and it owns no real property in New York. Id. at ¶¶ 16-17.

Defendant Cloud9 Wholesale is an Isle of Man company with its principal place of business in the Isle of Man. See Viguier Dec. at ¶ 44. Cloud9 Wholesale provides telecommunication services outside of the United States. Id. at ¶ 46. Its employees all work and reside in the United Kingdom and the Isle of Man. Id. It does not maintain any offices in New York, nor any state in the United States, and is not licensed to do business in New York. Id. The

3

company does not have a registered agent for service of process in New York; it has no New

York subsidiaries, divisions or affiliates; it has no New York telephone listing or mailing

address; it does not advertise or solicit business in New York; it does not have any bank accounts

in New York; it does not have any agents in New York; and it owns no real property in New

York. Id.

Defendant Cloud9 Mobile International, Ltd. is an English company with its

principal place of business in the United Kingdom. See Viguier Dec. at ¶ 24. Cloud9 Mobile

International, Ltd. is the parent company of the other named company Defendants. Id. at ¶ 26.

Its employees all work and reside in the United Kingdom, the Isle of Man and Italy. Id. It does

not maintain any offices in New York, nor any state in the United States, and is not licensed to

do business in New York. Id. The company does not have a registered agent for service of

process in New York; it has no New York subsidiaries, divisions or affiliates; it has no New

York telephone listing or mailing address; it does not advertise or solicit business in New York;

it does not have any bank accounts in New York; it does not have any agents in New York; and it

owns no real property in New York. Id. at ¶¶ 26-27.

Defendant Wire9 Telecom, Ltd. is an English company with its principal place of

business in the United Kingdom. See Viguier Dec. at ¶ 34. Wire9 Telecom, Ltd. provides

telecommunication services from within the United Kingdom. Id. at ¶ 36. Its employees all

work and reside in the United Kingdom, the Isle of Man and Spain. Id. It does not maintain any

offices in New York, nor any state in the United States, and is not licensed to do business in New

York. Id. The company does not have a registered agent for service of process in New York; it

has no New York subsidiaries, divisions or affiliates; it has no New York telephone listing or

mailing address; it does not advertise or solicit business in New York; it does not have any bank

accounts in New York; it does not have any agents in New York; and it owns no real property in New York. Id. at ¶¶ 36-37.

Defendant David Sutton is a citizen of the United Kingdom who resides in the United Kingdom. See Sutton Dec. at ¶ 3. Mr. Sutton does not own or lease any real property in New York. Id. He has never personally had any employees or agents in New York, had an office in New York, had bank accounts or other property in New York, or through an agent done or solicited business in New York. Id. at ¶5.

Defendant Jean Christophe Viguier is a citizen of France who resides in Luxembourg. See Viguier Dec. at ¶ 3. Mr. Viguier does not own or lease any real property in New York. Id. He has never personally had any employees or agents in New York, had an office in New York, had bank accounts or other property in New York, or through an agent done or solicited business in New York. Id. at ¶ 5.

Defendant Martin Holloway is a citizen of the United Kingdom who resides in the United Kingdom. See Holloway Dec. at ¶ 3. Mr. Holloway does not own or lease any real property in New York. Id. He has never personally had any employees or agents in New York, had an office in New York, had bank accounts or other property in New York, or through an agent done or solicited business in New York. Id. at ¶ 5.

To the extent that Plaintiff claims that any of the foreign corporate Defendants solicit business in New York, the "solicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services." Landoil, 918 F.2d at 1043 (quoting Laufer v. Ostrow, 55 N.Y.2d 305, 310, 434 N.E.2d 692, 694, 449 N.Y.S.2d 456, 459 (1982)). Under the "solicitation plus" test, in order for personal jurisdiction to be found to exist, the solicitation must be "substantial and continuous, and

defendant engages in other activities of substance in the state…." Id. at 1043-44.  None of the

foreign corporate Defendants have engaged in any activity in New York that would create

personal jurisdiction under this test.

   Moreover, contacts incidental to the provision of international

telecommunications services do not constitute "doing business" for jurisdictional purposes.

International Telecom, Inc. v. Generadora Electrica Del Oriente, S.A., No. 00 Civ. 8695, 2002

U.S. Dist. LEXIS 5023, at *13 (S.D.N.Y. March 27, 2002) (citing Access Telecom, Inc. v. MCI

Telecomm. Corp., 197 F.3d 694, 717 (5th Cir. 1999)).

B.  This Court Does Not Have Personal
   Jurisdiction Pursuant To CPLR § 302(a)(1)
   Because None Of The Defendants Transacted Business In New York

   In order for personal jurisdiction over the Defendants to exist in New York

pursuant to CPLR § 302(a)(1), two conditions are required: (1) Defendants must transact

business in New York; and (2) the claim against Defendants must arise from that business

activity.  See Cutco Industries v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986) (citing McGowan

v. Smith, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643, 645 (1981)). A non-

domiciliary transacts business under section 302(a)(1) when he "purposefully avails [himself] of

the privilege of conducting activities within [New York], thus invoking the benefits and

protections of its laws." Id. (quoting McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377,

382, 229 N.E.2d 604, 607, 283 N.Y.S.2d 34, 37 (1967)).

   Courts look to the totality of the circumstances to determine whether the

defendant has engaged in such purposeful activity, and require a "substantial nexus" between the

business transacted and the cause of action sued upon.  See Cutco Industries, 806 F.2d at 365;

Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29-31 (2d Cir. 1996).  The

relevant factors typically weighed in determining whether a party has "transacted business" are: (1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York entity, the defendant visited New York for meetings devoted to the contractual relationship; (3) what choice of law clause (if any) is in the contract; and (4) whether the contract requires the defendant to send notices and payments in New York, or subjects defendant to supervision by the plaintiff corporation in New York. Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 22-23 (2d Cir. 2004) (citing Agency Rent A Car Sys., Inc., 98 F.3d at 29). A weighing of these factors shows that none of the Defendants purposefully availed themselves of the privilege of conducting activities within New York, and thus, personal jurisdiction pursuant CPLR § 302(a)(1) does not exist over any of the Defendants.

As shown in the accompanying Declarations by the Defendants, the only business that was transacted between any of the parties here, was a Master Services Agreement ("Services Agreement") and Order Form entered into between Plaintiff and Cloud9 Wholesale that was negotiated, signed and performed outside of New York. The Services Agreement was negotiated by a separate defendant to Plaintiff's Complaint, Lee Jones, a former director of Cloud9 Wholesale and Mark Fletcher who was, upon information and belief, a United Kingdom resident and officer of Plaintiff who was based in the London offices of Plaintiff. See Viguier Dec. at ¶ 53. Upon information and belief, all negotiations occurred between Mr. Fletcher of Plaintiff and Mr. Jones of Cloud9 Wholesale while both parties were in the United Kingdom and Isle of Man. Id. Upon information and belief, all communication with Plaintiff by Mr. Jones in connection with the negotiation occurred while Mr. Jones was in the United Kingdom of Isle of Man. Id. Upon information and belief, the Services Agreement and Order Form were signed by Mr.

Fletcher for Plaintiff and Mr. Jones for Defendant Cloud9 Wholesale while they were located in the United Kingdom. Id. at ¶ 54.

The Services Agreement between Plaintiff and Cloud9 Wholesale provided Plaintiff with access to telecommunications technology that Plaintiff then used to define the exact products and services it sold to its own mobile telephone end users so that cheaper mobile telephone calls could be made while traveling outside of the United States. See Viguier Dec. at ¶ 56. Cloud9 Wholesale did not supply mobile telephone communications services directly to Plaintiff's end users, but rather supplied SIM cards with Plaintiff's name and artwork pre-printed, and support services to Plaintiff who defined the exact product features, tariffs, terms and conditions and then supplied its own mobile telephone end users directly or other re-sellers who always maintained ownership of the relationship with the end user. Id. at ¶ 57; see also Sutton Dec. at ¶ 24. Plaintiff's customers would have no reason to know about Cloud9 Wholesale or any of the other Defendants. Id.; see also Sutton Dec. at ¶ 24. Plaintiff's own packaging specified to its end users that the mobile telephones sold by Plaintiff were intended for use by its end users while they were traveling outside of the United States. Id. at ¶ 58; see also Sutton Dec. at ¶ 25, Ex. A.

After the Services Agreement between Plaintiff and Cloud9 Wholesale was executed, no director, employee or agent of Cloud9 Wholesale, or any of the other company Defendants, visited New York for meetings related to the contractual relationship. See Viguier Dec. at ¶ 55. The contract has a choice of law provision that requires that it "be governed by, construed, and interpreted in accordance with English law" and that the parties "submit to the exclusive jurisdiction of the English courts." Id. at ¶ 65, Ex. A, p. 6.

Pursuant to the Services Agreement and Order Form, Plaintiff was obligated to pay fixed monthly rental and usage charges to Cloud9 Wholesale. See Viguier Dec. at ¶ 61; Sutton Dec. at ¶ 28. Cloud9 Wholesale created invoices for these fixed charges in the United Kingdom and/or Isle of Man and sent them to Plaintiff's offices in the United Kingdom. See Viguier Dec. at ¶ 62; Sutton Dec. at ¶ 29. The Order Form requires that Plaintiff pay its invoiced charges via wire transfer to Cloud9 Wholesale's bank account located in the Isle of Man. See Viguier Dec. at Ex. B, p. 5. Plaintiff wired payments to Cloud9 Wholesale's bank account in the United Kingdom or Isle of Man. See Viguier Dec. at ¶ 63; Sutton Dec. at ¶ 30.

Defendants (1) Cloud9 Mobile Communications, Ltd., formerly known as Defendant Cloud9 Mobile Communications PLC, (2) Cloud9 Mobile International, Ltd. and (3) Wire9 Telecom, Ltd. did not conduct any business activity with Plaintiff in New York or anywhere else. See Viguier Dec. at ¶¶ 18, 28 and 38.

Defendant David Sutton was merely Plaintiff's account manager for Cloud9 Wholesale and was not involved in the negotiation of the Services Agreement. See Sutton Dec. at ¶¶ 15-20. Any and all communications between Plaintiff and Mr. Sutton regarding Plaintiff's account occurred while Mr. Sutton was in the United Kingdom. Id. at ¶ 22. The only meetings between Plaintiff and Mr. Sutton regarding Plaintiff's account occurred in the United Kingdom. Id. at ¶ 21. Mr. Sutton did not transact any business with Plaintiff in New York or anywhere else. Id. at ¶ 6.

Defendant Martin Holloway is merely an employee of Cloud9 Mobile International, Ltd. who had no responsibility for Plaintiff's account with Cloud9 Wholesale. See Holloway Dec. at ¶ 12. Mr. Holloway had very limited contact with Plaintiff always while he

was located in the United Kingdom, and certainly did not transact any business with Plaintiff in New York or anywhere else. Id. at ¶¶ 6 and 13.

Defendant Jean Christophe Viguier is a director of the foreign corporate Defendants, but was not involved in the negotiation of the Services Agreement between Plaintiff and Cloud9 Wholesale. See Viguier Dec. at ¶¶ 1 and 53. Mr. Viguier had very limited contact with Plaintiff, and only had physical contact with representatives of Plaintiff while he was located in the United Kingdom, and certainly did not transact any business with Plaintiff in New York. Id. at ¶ 6 and 9-10.

To the extent that the foreign Defendants had limited contacts with the Plaintiff by telephone and e-mail correspondence when representatives of the Plaintiff were in New York, such contacts are not sufficient to establish personal jurisdiction here. See Hughes v. BCI International Holdings, Inc., 452 F. Supp. 290, 300 (S.D.N.Y. 2006) (Baer, J.) ("Generally, telephone calls and other communications into New York by an out of state defendant, taken alone, are insufficient to establish a transaction of business in New York."); Whitaker v. Fresno Telstat, Inc., 87 F. Supp. 2d 227, 230-31 (S.D.N.Y 1999) ("New York courts have held that conducting contractual negotiations by phone, fax or mail with a party in New York does not constitute the transaction of business within the state."). Based on these facts, which are beyond dispute, it cannot fairly be said that any of these Defendants purposefully availed themselves of the privilege of conducting business in New York.

C.    This Court Does Not Have Personal Jurisdiction
      Pursuant To CPLR § 302(a)(1) Because None Of
      The Defendants Contracted To Supply Goods Or Services In New York

In determining whether the Defendants contracted to supply goods or services in New York, the primary factors this Court should consider include: (1) the extent to which the

Defendants were physically present in New York; (2) the extent of the Defendants' risk of loss as it affected the New York transaction; and (3) the extent to which the contract was to be performed in New York.  See Rolls Royce Motors, Inc. v. Charles Schmitt & Co., 657 F. Supp. 1040, 1051 (S.D.N.Y. 1987).

Cloud9 Wholesale is the only Defendant that contracted with Plaintiff.[1]  As shown in the annexed Declarations, Cloud9 Wholesale has never been physically present in New York and the Services Agreement was to be performed outside of the United States.  Here, the provision of telecommunication services by Cloud9 Wholesale to Plaintiff occurred in the United Kingdom and Isle of Man where Cloud9 Wholesale's telecommunications systems are based.  See Viguier Dec. at ¶ 59; Sutton Dec. at ¶ 26.  Moreover, Cloud9 Wholesale supplied SIM cards to Plaintiff in the United Kingdom either to a third party fulfillment house or directly to Plaintiff's United Kingdom offices.  See Viguier Dec. at ¶ 60; Sutton Dec. at ¶ 27.

Accordingly, Cloud9 Wholesale contracted with Plaintiff to provide telecommunications goods and services outside of the United States, and thus, personal jurisdiction pursuant to CPLR § 302(a)(1) is not present here.

D.    This Court Does Not Have Personal Jurisdiction
      Over Any Of The Defendants Pursuant To CPLR § 302(a)(2)

In order for personal jurisdiction to be sustained pursuant to CPLR § 302(a)(2), the defendant must commit the tort while he or she is *physically* present in New York.  See Bensusan Restaurant Corp. v. King, 126 F.3d 25, 28-29 (2d Cir. 1997); Carlson v. Cuevas, 932 F. Supp. 76, 80 (S.D.N.Y. 1996) (Baer, J.).

---

[1] As shown in the annexed Declarations, with the exception of Cloud9 Wholesale, none of the Defendants contracted with Plaintiff at all, and thus, personal jurisdiction pursuant to CPLR § 302(a)(1) is not present here.  See Viguier Dec. at ¶¶ 7, 19, 29, and 39; Sutton Dec. at ¶ 7; and Holloway Dec. at ¶ 7.

Here, as shown in the annexed Declarations, none of the Defendants conducted any business activity with the Plaintiff while any of the Defendants were physically present in New York. As Plaintiff cannot demonstrate that any of the Defendants committed any act connected to this action while in New York, there is no personal jurisdiction pursuant to CPLR § 302(a)(2). See Pieczenik v. Dyax Corporation, No. 00 Civ. 243, 2000 U.S. Dist. LEXIS 9533, at *17-18, (S.D.N.Y. July 11, 2000) (Baer, J.).

E.    This Court Does Not Have Personal Jurisdiction
      Over Any Of The Defendants Pursuant To CPLR § 302(a)(3)(i)
      Because The Situs Of Plaintiff's Alleged Injury Was Not In New York

To establish jurisdiction under CPLR § 302(a)(3)(i), Plaintiff must show (1) Defendants' commission of a tort outside New York; (2) injury to Plaintiff in New York; and (3) that Defendants regularly do or solicit business, or engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in New York.

Courts determining whether there is injury in New York sufficient to warrant jurisdiction under CPLR § 302(a)(3) must apply a situs-of-injury test, which asks them to locate the "original event which caused the injury" and not the location where the resultant damages are subsequently felt. See Bank Brussels, 171 F.3d at 791 (citing Hermann v. Sharon Hosp., Inc., 135 A.D.2d 682, 683, 522 N.Y.S.2d 581, 583 (2d Dep't 1987)).

Here, Plaintiff cannot show that it was injured in New York merely because it has a place of business in New York. Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990); Fantis Foods, Inc. v. Standard Importing Co., Inc., 49 N.Y.2d 317, 325-27, 402 N.E.2d 122, 125-26, 425 N.Y.S.2d 783, 786-87 (1980) (holding that the injury resulting from an out-of-state tort does not have its situs in New York merely by virtue of the fact that the injured party

resides there and suffers pecuniary loss there). Plaintiff's Complaint, at bottom, claims that it

paid more than it was required to under the Services Agreement between Plaintiff and Cloud9

Wholesale because Cloud9 Wholesale issued "fraudulent" invoices. However, assuming for

purposes of this motion that Plaintiff's allegations are true, Cloud9 Wholesale created the

"fraudulent" invoices in the United Kingdom and sent the invoices to Plaintiff's London offices.

Plaintiff wired money to Cloud9 Wholesale's bank account in the United Kingdom or Isle of

Man. Moreover, Cloud9 Wholesale provided SIM cards to Plaintiff in the United Kingdom and

its telecommunications systems are based in the United Kingdom and Isle of Man.

Accordingly, the "original event" that caused Plaintiff's alleged injury occurred in the United

Kingdom or the Isle of Man—not New York, and thus, jurisdiction pursuant to CPLR §

302(a)(3) is not present here. See International Telecom, 2002 U.S. Dist. LEXIS 5023, at *15.

Notably, while loss of profits, if a foreseeable consequence of an out-of-state

tort, may confer jurisdiction under CPLR § 302(a)(3), it is not enough for the Plaintiff here to

claim that it may be able to establish the loss of sales, customers and good will in New York

where the complaint alleges no concrete damages. See Atalanta Corp. v. Polskie Linie

Oceaniczne, 683 F. Supp. 347, 350 (S.D.N.Y. 1988); Securities Training Corp. v. Securities

Seminar, Inc., 633 F. Supp. 938, 942 (S.D.N.Y. 1986).

Even if Plaintiff could show that it was injured in New York, personal

jurisdiction pursuant to CPLR § 302(a)(3)(i) is lacking here because none of the Defendants

regularly do or solicit business, or engage in any other persistent course of conduct,[2] or derive

substantial revenue from goods used or consumed or services rendered in New York. It is not

sufficient to show that a foreign defendant derived substantial revenue from sales to a New

---

[2] Correspondence between Plaintiff and certain Defendants is not sufficient to constitute "persistent
conduct" in the state to sustain personal jurisdiction pursuant to CPLR § 302(a)(3). See Smith v. Morris &
Manning, 647 F. Supp. 101, 104 (S.D.N.Y. 1986).

York entity. See Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 200 (2d Cir. 1990). The Plaintiff must "make some showing that the associated goods were also 'used or consumed' in New York." Id. Here, it is beyond dispute that Plaintiff intended its customers to use its mobile phone handsets while traveling overseas; Cloud9 Wholesale's telecommunications systems are based in the United Kingdom and Isle of Man; and Cloud9 Wholesale provided SIM cards to Plaintiff in the United Kingdom. Accordingly, the telecommunications services provided to Plaintiff by Cloud9 Wholesale were used or consumed outside of New York.

F.    This Court Does Not Have Personal Jurisdiction
      Over Any Of The Defendants Pursuant To CPLR § 302(a)(3)(ii)
      Because New York Consequences Were Not Reasonably Foreseeable

            To establish jurisdiction under CPLR § 302(a)(3)(ii), Plaintiff must show (1) Defendants' commission of a tort outside New York; (2) injury to Plaintiff in New York; (3) that Defendants should have reasonably foreseen New York consequences; and (4) that Defendants derive substantial revenue from international commerce. See Fantis Foods, Inc. v. Standard Importing Co., Inc., 49 NY2d 317, 325, 402 NE2d 122, 125, 425 NYS2d 783, 786 (1980).

            The reasonable expectation of consequences provision has been construed in light of the due process standard for long-arm jurisdiction, so that the consequences of the Defendants' alleged actions are reasonably foreseeable only if the Defendants should reasonably anticipate being haled into court in New York based on the conduct and connection to the forum. See Atalanta Corp., 683 F. Supp. at 350. Here, Cloud9 Wholesale provided telecommunications goods and services to Plaintiff in the United Kingdom and Isle of Man that Plaintiff used in its business of providing mobile telephones intended for use by Plaintiff's

customers while traveling outside of the United States.  Moreover, the Defendants did not

purposefully avail themselves of the privilege of conducting activities within New York.

Accordingly, the Defendants could not have foreseen New York consequences from its actions,

and thus jurisdiction pursuant to CPLR § 302(a)(3) is not present here.  See Cooperstein v. Pan-

Oceanic Marine, Inc., 124 AD2d 632, 634, 507 NYS2d 893, 894 (2d Dep't 1986).

        CPLR § 302(a)(3)(ii) also requires that the Defendants derive substantial revenue

from international commerce.  Plaintiff's Complaint makes no allegations regarding any

revenue that the Defendants may derive from international commerce.  However, even if

Plaintiff could establish that the foreign corporate Defendants derive substantial revenue from

international commerce, such revenue could not be attributed to the foreign individual

Defendants in order to provide a jurisdictional basis under CPLR § 302(a)(3)(ii).  See Bulk Oil

(USA) Inc. v. Sun Oil Trading Co., 584 F. Supp. 36, 41-42 (S.D.N.Y. 1983).  As alleged in the

accompanying Declarations, none of the foreign individual Defendants derived any revenue

from international commerce, and thus personal jurisdiction pursuant CPLR § 302(a)(3)(ii) is

not present here.  See Viguier Dec. at ¶ 13; Sutton Dec. at ¶ 13; and Holloway Dec. at ¶ 11.

G.     This Court Does Not Have Personal Jurisdiction
       Over Any Of The Individual Defendants Because
       The Corporate Defendants Did Not Act As Their Agents

        The Services Agreement between Defendant Cloud9 Wholesale and Plaintiff was

entered into to further the company's business and not to advance the purely personal ends of

any of the individual Defendants.  See Viguier Dec. at ¶ 72; Sutton Dec. at ¶ 43; and Holloway

Dec. at ¶ 15.  None of the corporate Defendants acted as an agent for any of the individual

Defendants. See Viguier Dec. at ¶ 74; Sutton Dec. at ¶ 44; and Holloway Dec. at ¶ 16.

Plaintiff's Complaint fails to establish any agency relationship between the company and

individual Defendants because it merely names individual defendants based on their company position or title.  See Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 324-25 (S.D.N.Y 1998). Accordingly, there is no personal jurisdiction over any of the individual Defendants under an agency theory.  Id.

II.

IN THE ALTERNATIVE, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE AND *FORUM NON CONVENIENS*

Plaintiff and Cloud9 Wholesale entered into a Services Agreement that underlies all of the Plaintiff's claims in this action.  The forum selection clause in the Services Agreement vests exclusive jurisdiction in the English courts for all disputes between the parties. Accordingly, this Court is the improper venue for Plaintiff's claims against Cloud9 Wholesale and this action should be dismissed pursuant to Rule 12(b)(3).  Moreover, this Court ought to dismiss Plaintiff's Complaint under the doctrine of *forum non conveniens*.

A.  The Forum Selection Clause In The Parties'
    Contract Bars Maintenance Of This Action In New York

Courts in the Second Circuit engage in a four-step inquiry in deciding whether to enforce a forum selection clause: (1) was the clause reasonably communicated to the party resisting enforcement; (2) is the clause mandatory or permissive; (3) are the claims and parties involved in the suit covered by the clause; and (4) if the clause is presumptively enforceable, has the resisting party rebutted that presumption by showing that enforcement would be unreasonable or unjust, or that the clause is invalid because it was obtained by fraud or overreaching.  See Phillips v. Audio Active Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007).  If the forum selection clause was communicated to the resisting party, is mandatory and applies to the claims and parties involved, it is presumptively enforceable.  Id.; Carematrix of Massachusetts,

Inc. v. Kaplan, 385 F. Supp. 2d 195, 197 (S.D.N.Y. 2005) (Baer, J.) ("A forum selection clause is presumed to be valid, and the plaintiff 'who brought the suit in a forum other than the one designated by the forum selection clause' must 'make a strong showing in order to overcome the presumption of enforceability.'").

       First, the forum selection clause is a clear contractual term (not hidden, but rather in its own paragraph set-off with a "Governing Law" title) in the Services Agreement, which is a commercial contract negotiated at arms-length between two sophisticated parties.  See Carematrix, 385 F. Supp. 2d at 199 (enforcing forum selection clause "made in an arms-length negotiation, by experienced and sophisticated businessmen").  Plaintiff cannot seriously dispute that it was unaware of the forum selection clause, which clearly states that the "[Services] Agreement shall be governed by, construed, and interpreted in accordance with English Law and [the] parties hereby submit to the *exclusive* jurisdiction of the English courts." See Viguier Dec., Ex. A, p. 6.  Notably, the "law does not relieve a commercial entity of an obligation knowingly assumed simply because the complaining party lacked the bargaining leverage to avoid the unwanted contract term." HNY Assocs., LLC v. Summit Resort Props., No. 01 Civ. 0428, 2001 U.S. Dist. LEXIS 5310, at *6 (S.D.N.Y. April 30, 2001) (Baer, J.).

       Second, the forum selection clause is mandatory because it provides for the *exclusive* jurisdiction of the English courts.  See Phillips, 494 F.3d at 386 ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language").

       Third, the forum selection clause encompasses all of the claims by Plaintiff against Cloud9 Wholesale.  The Second Circuit has endorsed an expansive reading of the scope of forum selection clauses, in keeping with the public policy favoring their use.  See Russbeer

Int'l LLC v. OAO Baltika Brewing Co., No. 07 Civ. 1212, 2008 U.S. Dist. LEXIS 25471, at *16 (E.D.N.Y. March 31, 2008) ("The Second Circuit has consistently held that forum selection clauses are to be interpreted broadly and are not restricted to pure breaches of the contracts containing the clauses."). The Court, in Direct Mail Prod. Servs. Ltd. v. MBNA Corp., No. 99 Civ. 10550, 2000 U.S. Dist. LEXIS 12945, at *14-20 (S.D.N.Y. September 7, 2000), held that a virtually identical forum selection clause as the one contained in the Services Agreement, encompassed tort and statutory claims. Where, as here, the Plaintiff's tort claims involve the same operative facts as the parallel claim for breach of contract, the circuit courts have held that a contractually-based forum selection clause also encompasses the tort claims. Id. at *16-17. Plaintiff should not be able to frustrate the purpose and benefit of the forum selection clause through the artful pleading in its Complaint. Id. at 16; see also Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1360 (2d Cir. 1993) (in addressing the scope of a forum selection clause, holding that "[w]e refuse to allow a party's solemn promise to be defeated by artful pleading"); Phillips, 494 F.3d at 388 (same).

Based on the above, the forum selection clause in the Services Agreement is presumptively enforceable, and Plaintiff may only avoid its application if Plaintiff carries its heavy burden of showing that the forum selection clause is unreasonable. See New Moon Shipping Co., Ltd. v. Man B & W Diesel AG, 121 F.3d 24, 32 (2d Cir. 1997). Forum selection clauses are unreasonable only:

> (1) if their incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum [in which suit is brought].

18

Roby, 996 F.2d at 1363 (citing The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)).  First, Plaintiff will not be able to show that the forum selection *clause itself* was induced by fraud.  See Stamm v. Barclays Bank of New York, 960 F. Supp. 724, 729-30 (S.D.N.Y. 1997).  Second, there are no circumstances that would prevent Plaintiff from bringing its claims in England, particularly where there is a prior action pending between the parties in England (see Viguier Dec. at ¶¶ 67-68), and the only potential hardship of litigating abroad was foreseeable when Plaintiff signed the Services Agreement with the forum selection clause.  See Phillips, 494 F.3d at 393.  Third, Plaintiff will be able to fully litigate its claims in the United Kingdom as English common law provides remedies for fraud and misrepresentation.  See Roby, 996 F.2d at 1365-66.  Finally, as shown above, in the Second Circuit there is a strong public policy favoring the use of forum selection clauses.  See Universal Grading Service v. eBay, Inc., No. 08 Civ. 3557, 2009 U.S. Dist. LEXIS 49841, at *50-51 (S.D.N.Y. June 10, 2009); Carematrix, 385 F. Supp. 2d at 198.

B.  This Action Ought To Be Dismissed
Pursuant To The *Forum Non Conveniens* Doctrine

The Second Circuit has instructed courts considering *forum non conveniens* motions to engage in a three-step analysis.  See Iragorri v. United Technologies Corp., 274 F.3d 65, 73 (2d Cir. 2001) (en banc).  First, the court determines the degree of deference that should be afforded the Plaintiff's choice of forum by assessing the extent to which the selection of the forum was based on reasons the law recognizes as valid.  Id.  Second, the court will consider the availability of an adequate alternative forum.  Id.  Third, if such a forum exists, the court will balance various private and public factors to determine which forum is most convenient and will best serve the ends of justice.  Id. at 73-74.

Here, the Plaintiff instituted a retaliatory action in this Court against Cloud9 Wholesale, and individuals and companies it never contracted with, after Cloud9 Wholesale brought an action in the United Kingdom, pursuant to the forum selection clause in the Services Agreement, for Plaintiff's failure to pay its outstanding invoices under the Services Agreement. Plaintiff's tactical filing of a Complaint in New York with trumped-up charges of fraud for the sole purpose of avoiding the forum selection clause should be given no deference by this Court.

It cannot seriously be disputed that the English courts provide an adequate alternative forum. Plaintiff agreed to the exclusive jurisdiction of the English courts in its Services Agreement with Cloud9 Wholesale, and there currently is an action pending in the United Kingdom between Cloud9 Wholesale and Plaintiff. Plaintiff will be able to fully litigate its claims in the United Kingdom as English common law provides remedies for fraud and misrepresentation. See Roby, 996 F.2d at 1365-66.

Finally, all of the individual Defendants, except Mr. Viguier, are domiciled in the United Kingdom, and all of the Defendants' witnesses and evidence are located outside of the United States and primarily in the United Kingdom and Isle of Man. It would be an extreme hardship for the individual Defendants to litigate thousands of miles from home in a foreign country. The English courts have a strong local interest in deciding controversies involving its citizens and registered companies. Moreover, pursuant to the Services Agreement, English law governs disputes between Plaintiff and Cloud9 Wholesale, and the English courts certainly have a prevailing interest in the application of English law. Accordingly, this action should be dismissed pursuant to the *forum non conveniens* doctrine.

III.

IN THE ALTERNATIVE, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR
FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Pursuant to FRCP Rule 12(b)(6), a complaint will be dismissed if there is a

"failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive

a motion to dismiss, Plaintiff must allege "enough facts to state a claim for relief that is plausible

on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d

929 (2007).  Bald assertions and legal conclusions, or legal conclusions masquerading as facts

will not suffice to prevent a motion to dismiss.  Id. at 557. Therefore, this court must dismiss any

claim for which Plaintiff has not provided "enough" factual allegations to "raise a right to relief

above a speculative level."  Id. at 555.[3]

A.  Plaintiff's Fraud Claim Should Be Dismissed Because It Is Not Pleaded With
    Particularity And It Is Duplicative Of The Breach Of Contract Claim

FRCP Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state

with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The

Second Circuit has held that in order "[t]o satisfy the particularity requirement of 9(b), a

complainant must adequately specify the statements it claims were false or misleading, give

particulars as to the respect in which plaintiff contends the statements were fraudulent, state

when and where the statements were made, and identify those responsible for the statements."

Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).

Here, those portions of the Complaint sounding in fraud fail to satisfy the

heightened pleading requirements of Rule 9(b).  In Count One, Plaintiff's Complaint baldly

---

[3] In deciding a motion to dismiss, a court may consider documents attached as exhibits to the complaint or
incorporated into the complaint by reference, documents that are integral to the plaintiff's claims, even if
not explicitly incorporated by reference, and matters of which judicial notice may be taken.  See In re
Gildan Activewear, Inc., No. 08 Civ. 5048, 2009 U.S. Dist. LEXIS 55984, at *13-14 (S.D.N.Y. July 1,
2009) (Baer, J.).

21

asserts (1) "Cloud9 deliberately provided false and deceptive balances for numerous customers";

(2) "[T]he records it provided were false and fraudulent, misstating and miscalculating customer

usage"; (3) "Cloud9's records have provided fraudulent top up's in various forms and ways"; (4)

"Cloud9 made false statements to induce plaintiff into entering a relationship with it"; and (5)

"Cloud 9 made other false and deceptive statements during the parties' relationship." See

Wickline Dec., Ex. A, pp. 4 and 6).

     Notably, Plaintiff fails to link any of the above alleged fraudulent statements to

any particular Defendant. See Mills v. Polar Molecular Corp., 12 F. 3d 1170, 1175 (2d Cir.

1993) (dismissing allegations of fraud where the complaint did not link any of the alleged

fraudulent statements to any particular defendant); DiVittorio v. Equidyne Extractive Indus.,

Inc., 822 F.2d 1242, 1247 (2d Cir. 1987) (ruling that where, as here, there are multiple

defendants, the complaint must disclose the specific nature of each defendant's participation in

the alleged fraud). Plaintiff's bald and conclusory allegations of fraud must fail because they do

not identify the "who, what, when and where" of its allegations. See International Telecom,

2002 U.S. Dist. LEXIS 5023, at *20-22.

     In addition, at bottom, all of the allegations in Plaintiff's fraud claim are directly

related to the Services Agreement between Plaintiff and Cloud9 Wholesale and, if true, only

would support a cause of action for breach of contract against Cloud9 Wholesale. Indeed, in

Count Six of Plaintiff's Complaint, it alleges that all of the previous allegations of fraud

constitute a breach of contract. See Wickline Dec., Ex. A, p. 9.

     Plaintiff's attempt to dress up its breach of contract claim as fraud is belied by its

own allegations in its fraud claim that "Plaintiff and defendant Cloud9 entered into an agreement

under which defendant would provide SIM cards and other services to plaintiff." See Wickline

Dec., Ex. A, p. 3. Plaintiff then lists "obligations" that "defendant" had "[u]nder the terms of

this arrangement", which include "not [to] defraud" and to "correct and disclose"

"misrepresentations or false statements". Id. Plaintiff then concludes that "Defendant engaged

in multiple violations of these obligations" by committing the acts that Plaintiff characterizes as

fraud in a bald and conclusory fashion. Id. at 3-6. Finally, as damages for fraud, Plaintiff alleges

that "[i]t has paid substantially more than was required under the terms of any agreement,

arrangement, protocol or term and seeks to recover the amounts fraudulently obtained." Id. at 6.

Where, as here, the only allegations of fraud relate directly to a claimed breach of

contract, the fraud claim must be dismissed as duplicative of the contract claim. See Valjean

Manufacturing Inc. v. Michael Werdiger, Inc., No. 03 Civ. 6185, 2004 U.S. Dist. LEXIS 17580,

at *16 (S.D.N.Y. September 2, 2004) (Baer, J.); Rivas v. Amerimed USA, Inc., 24 A.D.3d 250,

824 N.Y.S.2d 41, 42 (1st Dep't 2006); Page v. Muze, Inc., 270 A.D.2d 401, 705 N.Y.S.2d 383,

384 (2d Dep't 2000) ("The fourth and fifth causes of action, alleging fraud by the corporate and

individual defendants, were properly dismissed since the facts underlying those claims are

duplicative of the facts underlying the two breach of contract claims.")

Moreover, it is a well settled principle of New York state law that in order to

allege a claim of fraud arising out of a contractual relationship, a plaintiff must not only allege

the basic elements of fraud, but also demonstrate either (1) a legal duty separate and apart from

the contractual duty to perform; (2) a fraudulent representation collateral to or extraneous to the

contract; or (3) special damages proximately caused by the fraudulent representation that are not

recoverable under the contract measure of damages. See Bridgestone/Firestone, Inc., v.

Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996). Here, Cloud9 Wholesale had a

contractual obligation to accurately invoice Plaintiff for its telecommunications services, and any

failure by Cloud9 Wholesale to do so is directly related to, and fully recoverable under, the

Services Agreement.  In addition, the Services Agreement contains a merger clause that states

that it represents the entire agreement between the parties, and thus, no fraudulent representation

collateral to or extraneous to the terms of the Services Agreement could be made here.  See

Viguier Dec., Ex. A, p. 5.  Accordingly, Plaintiff's fraud claim must fail.  Id.; see also Valjean,

2004 U.S. Dist. LEXIS 17580 at *17-18; Rivas, 824 N.Y.S.2d at 42.

B.  Plaintiff's New York Deceptive Practices Law Claim
    Should Be Dismissed Because The Defendants' Alleged
    Acts Are Not Consumer-Oriented And Relate To A Private Contract Dispute

Although Plaintiff does not specify what New York deceptive practices statute it

is suing under, it appears that Plaintiff bases Count Three of the Complaint on New York

General Business Law § 349, which prohibits "deceptive acts or practices in the conduct of any

business, trade or commerce or in the furnishing of any service in this state."  To state a cause

of action under Section 349, a plaintiff must allege (1) a deceptive consumer-oriented act or

practice which is misleading in a material respect, and (2) injury resulting from such act.  See

Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000); ExxonMobil Inter-America, Inc. v.

Advanced Information Engineering Servs., Inc., 328 F. Supp. 2d 443, 447 (S.D.N.Y. 2004).

As a threshold matter, as shown above, none of the Defendants conducted any

business or furnished any service in New York.  Moreover, New York courts require that the

alleged deceptive acts be consumer-oriented.  See Oswego Laborers' Local 214 Pension Fund v.

Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744, 623 N.Y.S. 2d 529, 532

(1995) ("Private contract disputes, unique to the parties, for example, would not fall within the

ambit of the statute.").  New York courts have identified a consumer, for Section 349 purposes,

as one "who purchase[s] goods and services for personal family or household use."  Sheth v.

N.Y. Life Ins. Co., 273 A.D.2d 72, 73, 709 N.Y.S.2d 74, 75 (1st Dep't 2000); see also Cruz v.

NYNEX Info. Res., 263 A.D.2d 285, 291, 703 N.Y.S.2d 103, 107 (1st Dep't 2000) (finding no

section 349 liability in a contract to sell advertisement space in the Yellow Pages because this

was a commodity available only to businesses, and not the public at large). Where, as here,

there is a disputed private transaction--i.e., the Services Agreement between Plaintiff and

Cloud9 Wholesale--between sophisticated business entities that does not have ramifications for

the public at large, Section 349 liability does not lie. See ExxonMobil, 328 F. Supp. 2d at 449.

C. Plaintiff's RICO Claim Should Be Dismissed Because
   The Required Elements For Liability Have Not Been Pled

Plaintiff's RICO claims are fatally deficient and must be dismissed.[4]

Specifically, among other deficiencies, Plaintiff's RICO claim fails to (1) plead the existence of

a RICO "enterprise"; (2) adequately detail the participation, control and decision making

authority of any of the Defendants; (3) plead with requisite Rule 9(b) particularity allegations of

fraud that Plaintiff alleges constitute the RICO predicate acts[5]; or (4) adequately plead

"continuity" of the alleged racketeering activity, either by virtue of "closed-ended" or "open-

ended" continuity. See International Telecom, 2002 U.S. Dist. LEXIS 5023, at *23-30.

D. Plaintiff's Negligent Misrepresentation Claim
   Should Be Dismissed Because The Plaintiff Does
   Not Identify Any Specific Statements And There Is
   No Special Relationship Between Any Of The Parties

Under New York law, in order to allege a claim of negligent misrepresentation,

the plaintiff must demonstrate that "(1) the defendant had a duty, as a result of a special

---

[4] As an initial matter, there is no civil RICO cause of action under New York state law. See Le Paw v. BAT Industries P.L.C., No. 96 Civ. 4373, 1997 U.S. Dist. LEXIS 5328, at *4-5 (E.D.N.Y March 11, 1997).

[5] In fact, it is unclear from the allegations in the Complaint what predicate acts Plaintiff is alleging. To establish a pattern of racketeering activity, a plaintiff must plead at least two predicate acts, show that the acts are related and that they amount to, or pose a threat of, continuing criminal activity. See GICC Capital Corp., 67 F.3d 463, 465 (2d Cir. 1995).

relationship, to give correct information; (2) the defendant made a false representation that he or

she should have known was incorrect; (3) the information supplied in the representation was

known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff

intended to rely and act on it; and (5) the plaintiff reasonably relied on it to his or her

detriment." Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 20 (2d Cir. 2000).

   The particularity requirements of FRCP Rule 9(b) apply to allegations of

negligent misrepresentation. See Diario El Pais, S.L. v. The Nielsen Co., (US), Inc., No. 07

Civ. 11295, 2008 U.S. Dist. LEXIS 92987, at *25 (S.D.N.Y. November 6, 2008) (Baer, J.).

Here, the Plaintiff baldly asserts "that the statement (sic) were negligently made, and constituted

negligent misrepresentations." As Plaintiff does not identify any specific statement—much less

who said it when, where, how or why—by any of the Defendants, Plaintiff's claim for negligent

misrepresentation must fail.

   Moreover, courts have routinely held that an ordinary, arms-length commercial

relationship, like the one between Plaintiff and Cloud9 Wholesale, does not give rise to a

special duty to speak with care. See Diario, 2008 U.S. Dist. LEXIS 92987, at *26-27; IXE

Banco, S.A. v. MBNA America Bank, N.A., No. 07 Civ. 0432, 2008 U.S. Dist. LEXIS 19806,

at *34-35 (S.D.N.Y. March 7, 2008). Accordingly, Plaintiff's negligent misrepresentation claim

must be dismissed.

  E. Plaintiff's Punitive Damages Claim
   Should Be Dismissed Because The Defendants' Alleged
   Acts Are Not Morally Reprehensible Or Aimed At The Public-At-Large

   In New York, punitive damages are not recoverable for an ordinary breach of

contract because their purpose is not to remedy private wrongs but to vindicate public rights.

See Cerveceria Modela, S.A. De C.V. v. USPA Accessories LLC, No. 07 Civ. 7998, 2008 U.S.

Dist. LEXIS 28999, at *16 (S.D.N.Y. April 10, 2008) (Baer, J.).

         Where, as here, the Plaintiff fails to allege egregious conduct by the Defendants

that is directed at the public generally, and the Complaint, stripped of its excesses, alleges a

private contract dispute between a telecommunications wholesaler and a re-seller, Plaintiff's

claim for punitive damages must be dismissed.  Id.; see also Rivas, 824 N.Y.S.2d at 43.

    F.  Plaintiff's Claims Against The Individual Defendants
       Should Be Dismissed Because The Complaint Does Not
       Identify Any Independent Tortious Acts By The Individual
       Defendants And The Corporate Defendants Are Not Mere Shells

         Plaintiff's Complaint is completely devoid of any factual specificity indicating

how any of the individual Defendants participated in any independent tortious acts or what role

they each played.  A corporate officer, director or employee only may be held individually liable

for acts on behalf of the corporation in the course of official duties if the individual commits an

independent tortious act.  See Murtha v. Yonkers Child Care Ass'n, Inc., 45 N.Y.2d 913, 915,

383 N.E.2d 865, 411 N.Y.S.2d 219 (1978); Mobile Data Shred, Inc. v. United Bank of

Switzerland, No. 99 Civ. 10315, 2000 U.S. Dist. LEXIS 4252, at *23 (S.D.N.Y. April 5, 2000)

("Personal liability will be imposed only if the plaintiff shows that the officer or employee acted

outside the scope of his employment by committing an independent tort or by pursuing a

personal interest.").

         Notably, Plaintiff's Complaint does not allege that the individual Defendants

breached any duty owed to Plaintiff separate and apart from the contractual obligations owed to

Plaintiff by Cloud9 Wholesale.  See Rivas, 824 N.Y.S.2d at 42.  Generally, "[a] director of a

corporation is not personally liable to one who has contracted with the corporation on the theory

of inducing a breach of contract, merely due to the fact that, while acting for the corporation, he

has made decisions and taken steps that resulted in the corporation's promise being broken."
Murtha, 45 N.Y.2d at 915; see also Mills, 12 F. 3d at 1177.

The individual Defendants also cannot be held personally liable by piercing the corporate veil. Piercing the corporate veil is a an exceptional remedy that requires a showing that "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit fraud or wrong against the plaintiff which resulted in plaintiff's injury . . . ." Morris v. N.Y. State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141, 623 N.E.2d 1157, 603 N.Y.S.2d 807 (1993). As alleged in the accompanying Declarations, all the company defendants (1) observed all corporate formalities; (2) are adequately capitalized; (3) never mingled company and individual finances; and (4) were not dominated by any of the directors or employees for their personal business. See Viguier Dec. at ¶ 73. Moreover, the Services Agreement between Defendant Cloud9 Wholesale and Plaintiff was entered into to further the company's business and not to advance the purely personal ends of any of the individual Defendants. See Viguier Dec. at ¶ 72; Sutton Dec. at ¶ 43; and Holloway Dec. at ¶ 15.

Here, the Plaintiff has pleaded no facts that support an inference that any of the individual Defendants committed fraud or wrongdoing or acted in any capacity other than as employees or directors of the company Defendants. Nowhere does the Complaint allege that any of the individual Defendants used any of the company Defendants to accomplish "his own and not the corporation's business." William Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 138 (2d Cir. 1991). Moreover, there is no allegation that the company Defendants are incapable of satisfying a potential judgment.

Accordingly, there is no basis for liability against any of the individual Defendants and the Complaint should be dismissed as against all of the individual Defendants. See <u>Novak v. Scarborough Alliance Corp.</u>, 481 F. Supp. 2d 289, 294 (S.D.N.Y.2007).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's Complaint be dismissed (1) pursuant to FRCP Rule 12(b)(2) for lack of personal jurisdiction; or, alternatively, (2) pursuant to FRCP Rule 12(b)(3) for improper venue and *forum non conveniens*; or, alternatively, (3) pursuant to FRCP Rule 12(b)(6) for failure to state a claim upon which relief can be granted; and for such further relief as the Court deems just and proper.

Dated: Brooklyn, New York
    September 15, 2009

LAW OFFICE OF DONOVAN WICKLINE, PC

By: _____
        Donovan L. Wickline (DW-9248)
        45 Pineapple Street
        Brooklyn, New York 11201
        (718) 858-1443
        Attorneys for Cloud9 Mobile Communications, Ltd.(formerly known as Cloud9 Mobile Communications PLC), Cloud9 Mobile Communications (Wholesale Services), Ltd., Cloud9 Mobile International, Ltd., Wire9 Telecom, Ltd., David Sutton, Jean Christophe Viguier, and Martin Holloway